HAZEL R. DUNKUM, Respondent, *v.* MACECK BUILDING CORPORATION, Appellant.

(Argued April 1, 1931; decided May 12, 1931.)

*Richard H. McIntyre* for appellant. The plaintiff cannot avoid the effect of constitutional acts of limitation as well as conduct of her predecessor amounting to estoppel, merely by selecting a statutory form of action suited to such an evasive purpose. (*Ostrander* v. *Darling,* 127 N. Y. 70; *Meigs* v. *Roberts,* 162 N. Y. 371; *Halsted* v. *Silberstein,* 196 N. Y. 1; *People* v. *Turner,* 145 N. Y. 451; 168 U. S. 90; *Bryan* v. *McGurk,* 200 N. Y. 337; *Rubin* v. *City of Syracuse,* 212 App. Div. 475; 241 N. Y. 504; *Shepard* v. *Kusch,* 89 Misc. Rep. 112; *Nehasane Park Assn.* v. *Lloyd,* 167 N. Y. 438; *Cardwell* v. *Clark,* 94 Misc. Rep. 433; *Wallace* v. *McEchron,* 176 N. Y. 427; *Hill* v. *Supervisors,* 119 N. Y. 344; *Best Renting Co.* v. *City of New York,* 248 N. Y. 491; *Whitman* v. *City of New York,* 85 App. Div. 468; *Lewis* v. *Howe,*

174 N. Y. 340.) The plaintiff's predecessor, by attempting to redeem, established the validity of the tax sale and deed. (*Sanders* v. *Downs*, 141 N. Y. 422; *Sanders* v. *Carley*, 83 App. Div. 193; *Jackson* v. *Rowe*, 106 App. Div. 65; 191 N. Y. 512.) Plaintiff's predecessor in title was not a genuine mortgagee when he accomplished his purported redemption from the tax sale. (*Chard* v. *Holt*, 136 N. Y. 30; *Martin* v. *Stoddard*, 127 N. Y. 61.)

*Hugo Hirsh, Howard C. Tracy* and *George B. Davenport* for respondent. The statutes of alleged limitation are not applicable. (*Nehasane Park Assn.* v. *Lloyd*, 167 N. Y. 431; *Cardwell* v. *Clark*, 94 Misc. Rep. 433; *Shepard* v. *Kusch*, 89 Misc. Rep. 112; *Whitney* v. *Considine Investing Co.*, 200 App. Div. 193; *Ford* v. *Clendenin*, 215 N. Y. 10; *People* v. *Faxon*, 111 Misc. Rep. 699; *People* v. *Durey*, 126 Misc. Rep. 640; *People ex rel. McGinness* v. *Lewis*, 127 App. Div. 107; *People* v. *Witherbee*, 199 App. Div. 272; *Ostrander* v. *Bell*, 199 App. Div. 304; *Clark* v. *Kirkland*, 133 App. Div. 826; 202 N. Y. 573; *Wallace* v. *McEchron*, 176 N. Y. 424.) The Comptroller's deed is not conclusive evidence of the regularity of all prior proceedings from and including the assessment of the taxes up to the expiration of the time to redeem from the tax sale. (*Dever* v. *Cornwell*, 10 N. D. 123; *Mattingly* v. *District of Columbia*, 97 U. S. 687; *Groesbeck* v. *Seeley*, 13 Mich. 329; *Case* v. *Dean*, 16 Mich. 12; *Baker* v. *Kelley*, 11 Minn. 480; *Stoudenmine* v. *Brown*, 48 Ala. 699; *Marx* v. *Hanthorn*, 148 U. S. 172; *Cromwell* v. *MacLean*, 123 N. Y. 474; *Barnett* v. *Kovarick*, 23 Misc. Rep. 73; *Ostrander* v. *Bell*, 199 App. Div. 304; *Joslyn* v. *Rockwell*, 128 N. Y. 334; *People* v. *Witherbee*, 199 App. Div. 272; *Peterson* v. *Martino*, 210 N. Y. 412; *People* v. *Inman*, 197 N. Y. 200; *Mabie* v. *Fuller*, 255 N. Y. 194.) The Comptroller's deed was invalid, since no notice to redeem was published by the Comptroller prior to the delivery thereof, as required by law. (*Breevort* v. *City of Brooklyn*, 89 N. Y. 128;

*Sanders* v. *Downs,* 141 N. Y. 422; *Clason* v. *Baldwin,* 152 N. Y. 204; *Ostrander* v. *Darling,* 127 N. Y. 70; *Mabie* v. *Fuller,* 255 N. Y. 194.) The redemption from the tax sale of 1866 was valid. (*Jackson* v. *Rowe,* 106 App. Div. 65; 191 N. Y. 512; *Chard* v. *Holt,* 136 N. Y. 30.) The right to redeem was not affected by possession either of an unrecorded deed or of an unrecorded satisfaction piece. (*Bascom* v. *Smith,* 34 N. Y. 320; *Sheldon* v. *Edwards,* 35 N. Y. 279; *James* v. *Morey,* 2 Cow. 246; *Smith* v. *Roberts,* 91 N. Y. 470; *Van Nest* v. *Latson,* 19 Barb. 604; *Purdy* v. *Huntington,* 42 N. Y. 334; *Townsend* v. *Provident Realty Co.,* 110 App. Div. 226; *Martin* v. *Stoddard,* 127 N. Y. 61; *Hulbert* v. *Clark,* 128 N. Y. 295; *Raynor* v. *Wilson,* 6 Hill, 469; *Tarbell* v. *West,* 86 N. Y. 280; *Seely* v. *Seely,* 164 App. Div. 650.)

HUBBS, J. This is an action, brought under article 15 of the Real Property Law (Cons. Laws, ch. 50), to compel the determination of a claim to real property. The land at all times in question was vacant and unoccupied.

The plaintiff-respondent traces her title through an unbroken chain back to 1854. The defendant-appellant's title is based on a deed from the State Comptroller, dated in 1869, which recites that the property was purchased by the State upon a tax sale, held in 1866, for unpaid taxes for the years 1856 and 1857.

It is contended by the respondent that one of her mesne grantors legally redeemed the property from such tax sale. On July 1, 1854, Gelston, the then owner, deeded the land to Sharkey. On the same day Sharkey gave back to Gelston a mortgage thereon. On November 21, 1854, Sharkey deeded the land to Bennett. In July, 1869, Bennett deeded to Sanders. In 1855, fourteen years before he received his deed, Sanders had taken an assignment of the mortgage and duly recorded it in the same year. He was, therefore, after the time he received the deed from Bennett, the owner of the record title and also, by assignment, the owner of the mortgage. A certificate

of satisfaction of the mortgage, duly acknowledged in 1857, was recorded in 1904. The respondent received her deed in April, 1926, through mesne conveyances from Sanders.

In 1880, Sanders, as assignee of the mortgage, made an application to the State Comptroller to redeem the land from the tax sale of 1866, the sale upon which the appellant relies to establish its title. Sanders, in his application, recited that he was the owner of a duly recorded and unpaid mortgage covering the land in question. The application was granted and Sanders paid to the State Treasurer the amount due. If, at the time, Sanders was the owner of the mortgage and had complied with the provisions of the Tax Law then in force, the land was freed from the tax lien and the title of the appellant's mesne grantor was rendered a nullity. (Laws of 1855, ch. 427, § 78.)

It is urged by the appellant that the attempted redemption was ineffective:

*First,* because it must be presumed that Sanders had delivered the certificate of satisfaction of the mortgage at or about the time that it was acknowledged in 1857 and that he was not, therefore, a mortgagee at the date of the attempted redemption in 1880 and not entitled to redeem;

*Second,* that in 1869, when Sanders received his deed from Bennett, the mortgage which he then owned was merged in the deed, and for that reason he was not, in 1880, a mortgagee entitled to redeem; and

*Third,* that Sanders was not entitled to redeem because he had not filed in the office of the Comptroller a statement of his mortgage interest required, by section 82 of chapter 427, Laws of 1855, to be filed by a mortgagee in order to entitle him to notice from the Comptroller to redeem.

We think the appellant is wrong in each of its contentions.

The certificate of satisfaction was evidently in the

possession of Sanders in 1904, as it was not previously recorded. The records showed him to be the owner of the mortgage at that time. His application to redeem, filed with the State Comptroller, was duly sworn to and stated that he was then the owner of the mortgage. The trial court found as a fact that the certificate of satisfaction was retained by Sanders and filed and recorded at his request. No exception to such finding was filed by the appellant. Under such circumstances the mere fact that the certificate of satisfaction was acknowledged in 1857 does not establish that Sanders was not the owner of the mortgage in 1880 at the time when he paid the taxes and charges to the State Treasurer and redeemed the property. Many reasons might be suggested why Sanders executed and acknowledged the certificate of satisfaction in 1857. Such an occurrence is not so unusual as to create a conclusive presumption that the mortgage was then paid, especially in view of the other facts in the case.

It is a general rule, subject to exceptions, in actions at law, that when different estates coincide and meet in the same person the lesser is merged in the greater. (*Sheldon* v. *Edwards,* 35 N. Y. 279.) The doctrine of merger has never been favored in equity and there the estates will be held to be separate when justice requires it and such was the intention of the parties. The intent of the holder of the two estates will be gathered from the situation and the effect which a merger of the title would have upon his interest. Equity will prevent a merger whenever it will result in an injury to the owner and work injustice to him and, in the absence of some intervening right or equity in a third person, he may treat the estates as merged or not as he may deem it to be to his best interest to do. (*Smith* v. *Roberts,* 91 N. Y. 470; 2 Pom. Eq. Juris. [4th ed.] §§ 778, 779.)

No intervening right or equity existed in a third party which prevented Sanders from electing to keep the estates

separate. The grantee in the deed from the Comptroller had, at all times, the right to cut off the right of the mortgagee to redeem by serving a notice to redeem under section 77 of chapter 427, Laws of 1855.

At the time Sanders received his deed in 1869, more than two years had expired since the tax sale of 1866, at which sale the property was bid in by the State, and which sale is the basis of the appellant's alleged title. If the tax title, at the time Sanders received his deed, had become perfected and Sanders' grantor was foreclosed from questioning the regularity of the tax proceedings, the deed to Sanders was of little value. That was the apparent situation, as section 50 (Laws of 1855, ch. 427) required the owner to redeem within two years of the sale. It was, therefore, to his interest to keep the mortgage alive so that he could redeem the property from the tax sale under section 77 (Laws of 1855, ch. 427) which was in force at that time, and which required the purchaser at a tax sale to give to a mortgagee written notice of the sale, subject to the provisions of section 82 of said chapter. Under such circumstances equity will prevent the merger of the lesser estate in the greater.

Section 82 provided that if a mortgagee required the State Comptroller to give him notice to redeem, as required by section 77, he must file with the Comptroller within two years of the tax sale a notice stating the name of the mortgagor, a description of the land mortgaged and certain other details. That section was repealed by chapter 285, Laws of 1862. Therefore, at the time in question, a mortgagee was not required to file such a notice in the office of the State Comptroller in order to be entitled to the notice to redeem required to be served upon him by section 77 in order to cut off his interest in the land. As no notice to redeem was ever served upon Sanders as the assignee of the mortgage or upon his assignor, as required by section 77, he had a legal right

to redeem in 1880, when he paid the amount due and received a certificate of redemption from the State Comptroller. He had the same right, as assignee of the mortgage, that a mortgagee would have had. (Laws of 1855, ch. 427, § 80.) Such right was not affected by section 1, chapter 280, Laws of 1870, which re-enacted the requirement that a mortgagee should file in the office of the Comptroller a statement of his mortgage if he desired notice to redeem to be served upon him by the Comptroller. That act provided, in case a mortgagee filed the required statement in the office of the Comptroller, that he should have two years within which to redeem after service upon him of notice to redeem. That statute did not confer any new right upon a purchaser of a tax title to cut off the right of a mortgagee to redeem because the purchaser already had the right to cut off the lien of the mortgage by service of a notice under section 77 (Laws of 1855, ch. 427). The act of 1870 provided that a mortgagee could file a statement of his mortgage in the office of the Comptroller within two years of the tax sale. The tax sale took place in 1866, so that more than two years had expired before the law of 1870 was enacted and it was impossible for Sanders to comply with that law. It did not, therefore, apply to Sanders, who was still entitled to redeem under section 77 (Laws of 1855, ch. 427). The case of *Chard* v. *Holt* (136 N. Y. 30) does not hold to the contrary, as in that case the mortgagee was at all times in a position to comply with the statute, which required a mortgagee to file a notice setting forth the mortgage and his interest therein. Sanders' redemption of the property in 1880 from the tax sale of 1866 was, therefore, legal, and effectually cut off the title which the appellant received under the Comptroller's deed of 1869. (Laws of 1855, ch. 427, § 78.)

We would be content to rest our decision upon the ground that the respondent had legally redeemed the

property were it not for the fact that we are unable to agree with the conclusion reached by the Appellate Division to the effect that the appellant was not protected by certain statutes which were enacted for the purpose of limiting the time within which one having an interest in real property sold for taxes must move to protect such interest, which statutes purported to establish a conclusive presumption of the regularity of assessments and sales for taxes.

The taxes in question, assessed in 1856 and 1857, were defectively assessed, as the assessors failed to comply with the law in making up the assessment roll, and the defects were not mere irregularities but jurisdictional. The State Comptroller also failed to publish the notice to redeem as required by the Laws of 1855, chapter 427, section 61. Section 65 of that chapter made the Comptroller's deed presumptive evidence that the assessment of the land was regular and valid and that all subsequent proceedings, including the giving of all notices and the sale of the land, were regular and complied with the law. That section was amended by chapter 448 of the Laws of 1885. Under the statute, as amended, the Comptroller's deed was made conclusive evidence of the regularity of all prior proceedings " after the expiration of two years from the date of recording such * * * conveyances." The amendment also provided that such tax sale and conveyance might be canceled in a proper action brought therefor within the time specified. Chapter 427 of the Laws of 1855 was repealed by chapter 908 of the Laws of 1896. That act, therefore, repealed section 65 (Laws of 1855, ch. 427) which was amended by chapter 448 of the Laws of 1885, and neither chapter 427 of the Laws of 1855 nor the amendment of section 65 thereof by chapter 448 of the Laws of 1885 was in force when this action was commenced. Nevertheless, the Statute of Limitations contained in the act of 1885, while it was in force, constituted

a bar to respondent's right to contest the validity of the tax deed. The law of 1885 was made applicable to Kings county by chapter 217, Laws of 1891.

Section 131, chapter 908, Laws of 1896, makes the Comptroller's deed conclusive evidence of the legality of the sale and of all tax proceedings leading up to it. The same provision is now contained in section 132 of the Tax Law (Laws of 1909, chap. 62; Cons. Laws, chap. 60).

Defects in tax titles which are not jurisdictional may be remedied by curative acts passed for the purpose of correcting past defects and irregularities which constitute clouds on tax titles. " If the irregularity consists in doing some act, or in the mode and manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." (Cooley, Const. Limitations [8th ed.], vol. 2, pp. 775, 776.) Such statutes are constitutional and valid. (*People* v. *Turner*, 117 N. Y. 227; 145 N. Y. 451; 168 U. S. 90; *Halsted* v. *Silberstein*, 196 N. Y. 1.)

The Legislature cannot, however, by its fiat make legal a deed which was theretofore absolutely void because of jurisdictional defects. A curative act enacted for such a purpose is unconstitutional and void. It is an attempt to deprive the owners of the land of their property without due process of law. (*Marx* v. *Hanthorn*, 148 U. S. 172; *Wallace* v. *McEchron*, 176 N. Y. 424; *Cromwell* v. *MacLean*, 123 N. Y. 474.)

But the Legislature may legally enact a Statute of Limitations to prevent the assertion of a right to question the validity of a tax title of vacant and unoccupied lands because of jurisdictional defects in the sale and in the proceedings leading thereto, provided a reasonable time is given for the assertion of the right before the statute becomes operative. (*Meigs* v. *Roberts*, 162 N. Y. 371, 378; *Doud* v. *Huntington Hebrew Congregation*, 178 App. Div. 748; *Halsted* v. *Silberstein*, *supra*.)

The distinction between a curative act and a Statute of Limitations is clearly pointed out by Chief Judge CULLEN in the opinion in *Meigs* v. *Roberts* (*supra*). One is enacted to cure past irregularities which are not jurisdictional, and the other to " bar any right, however high the source from which it may be deduced." The validity of a Statute of Limitations which purports to bar a right which existed before the statute becomes effective depends upon whether the statute allows a reasonable time after it becomes a law within which a party may enforce his right.

If this were a direct action to cancel the tax deed under section 132 of the Tax Law, the defense of the Statute of Limitations would have constituted a bar to the action. The same principle applies in this action brought under article 15 of the Real Property Law. The complaint asserts that the plaintiff is the owner and entitled to possession of the land. The answer alleges that the defendant is the owner and entitled to possession. When it appeared that the defendant held title under a deed from the Comptroller which had been duly recorded and more than one year had expired since the passage of section 131 of chapter 908 of the Laws of 1896, the plaintiff's right to question the defendant's title was barred by the provisions of section 131. To hold otherwise would permit article 15 of the Real Property Law to afford a remedy which is barred by section 131 of the Tax Law as enacted in 1896 and by section 132 of the Tax Law as it now reads. It was so decided by Judge CRANE of this court at a Special Term in the case of *Shepard* v. *Kusch* (89 Misc. Rep. 112).

Chapter 448 of the Laws of 1885 allowed two years after the recording of all conveyances theretofore executed by the Comptroller within which the owner of unoccupied and vacant lands could test the validity of such conveyances. It also allowed six months after the act took

effect before the regularity of all proceedings should be conclusively presumed. Section 132 of chapter 908, Laws of 1896, allowed one year from the passage of the act for the same purpose. The time allowed was reasonable, and the owner of such unoccupied and vacant lands who failed to take action to test the validity of such tax deed within the time allowed therefor was effectually barred by such statutes. (*Halsted* v. *Silberstein*, *supra*.)

The question of the validity of a Statute of Limitations which purports to create a conclusive bar against an owner in actual possession of the land taxed, which was raised in *Meigs* v. *Roberts* (*supra*), is not involved in the case at bar, as the land here in question was vacant and unoccupied.

As this land was legally redeemed from the tax sale, the judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment affirmed.