ELLEN MCCARTHY, Appellant, v. JOHN EMMA, Respondent.

Argued March 3, 1952; decided May 29, 1952.

*Henderson G. Riggs* for appellant. I. Appellant has the absolute right to redeem the property because the notice to mortgagees required by section 62 of the Elmira City Charter admittedly was never given to the mortgagee. (L. 1906, ch. 477, §§ 61, 62; *Dunkum* v. *Maceck Bldg. Corp.,* 256 N. Y. 275; *Martin* v. *Stoddard,* 127 N. Y. 61; *Becker* v. *Howard,* 66 N. Y. 5; *Matter of Kessler* v. *Johnston,* 253 App. Div. 411; *Lowe* v. *Sheldon,*

250 App. Div. 673, 276 N. Y. 1; *Gillespie* v. *Board of Supervisors of Broome Co.,* 178 Misc. 890; *Matter of Clifford* v. *Seaman,* 278 App. Div. 667; *City of New Rochelle* v. *Stevens,* 271 App. Div. 977; *Patchogue Security Holding Corp.* v. *George,* 172 Misc. 128.) II. Tax statutes, because of their very confiscatory nature, must be strictly construed as to the taxing power and liberally construed as to one having an interest in the property. Therefore, the purchaser at the tax sale should not be rewarded for his failure to give the mortgagee the notice required by the statute when such failure operates to affect appellant's interest in the land. (*City Bank Farmers' Trust Co.* v. *New York Central R. R. Co.,* 253 N. Y. 49; *City of Rochester* v. *Fourteenth Ward Co-op. Bldg. Lot Assn.,* 183 N. Y. 23; *Matter of Federal Land Bank of Springfield* v. *Pickard,* 169 Misc. 753.)

*Boyd McDowell, II,* for respondent. I. The instant case is based solely on construction of the Elmira City Charter. (*Esposito* v. *Antonelli,* 164 Misc. 912; *Fulton* v. *Krull,* 200 N. Y. 105; *Peterson* v. *Martino,* 210 N. Y. 412; *People ex rel. Savory, Inc.,* v. *Plunkett,* 295 N. Y. 180.) II. Section 62 provides a limitation, not an extension, of the right to redeem by a mortgagee. III. The mortgagee is not without remedy.

FULD, J. The owners of certain real property in the city of Elmira mortgaged it to plaintiff's assignor in 1941. Taxes thereafter assessed against the premises having remained unpaid and in arrears, the property was sold by the city to defendant at a tax sale, and, fifteen months later, in November of 1948, he received a " declaration of sale " whereby the city granted him a lease for a fifty-year term. In 1950, the mortgagee sought to redeem the premises from the tax sale; his tender to effect such redemption was refused. There then followed this action, in which plaintiff seeks an adjudication that the declaration of sale is " of no effect ".

The rights of mortgagee and tax sale purchaser with respect to each other are set out in the Elmira City Charter (L. 1906, ch. 477). Section 58 of that statute deals with the delivery of a " declaration of sale " to the purchaser at a tax sale, with the leasehold estate to be granted him thereby, and with his right " at the expiration of such term " to remove any buildings or fixtures that may have been erected in that period. A declaration of sale, it provides, shall be delivered to the purchaser if the

real estate sold for taxes " shall not be redeemed in fifteen months after the sale ". During the fifteen-month interval between tax sale and the time fixed for delivery of the declaration of sale, section 61 recites, any " owner or claimant " may " redeem " the real estate so sold by paying the purchaser the amount paid by him at the tax sale plus other specified sums, and " on such payment   *   *   *   the title acquired by such sale shall cease and determine."

In order to accomplish a balance between the several economic interests represented by taxing authority, fee owner, mortgagee and purchaser at the tax sale, the legislature apparently took the view that, to allow a tax sale to destroy or affect the lien of a mortgage by the mere lapse of time — fifteen months in this instance — without more, would not afford proper protection to the mortgagee. Such a view was not without justification, since the assessment rolls are required to state the name of the owner and not the mortgage holder; since it is the owner, not the mortgagee, who in practice receives the bills for taxes; and since the obligation to pay the taxes is solely that of the owner, both by provision of the city charter and, invariably, by the terms of the mortgage. Accordingly, section 62 — following immediately the section defining the rights of an " owner or claimant " — was enacted to provide in its first sentence that " No sale of real estate   *   *   *   for nonpayment of any tax   *   *   *   shall destroy, or in any manner affect, the lien of any mortgage thereon   *   *   *   *except as hereinafter provided.*" That sentence unequivocally reflects a purpose to ameliorate the adverse effect upon the lien of a mortgage that would otherwise result from a sale for taxes.

It is to the remaining three sentences of section 62 that we turn to find what is intended by the clause, " except as hereinafter provided." The second sentence declares that it " shall be the *duty* of the purchaser " to give to the mortgagee a written notice of the sale, "requiring him to pay the amount of the purchase money, with interest   *   *   *   within six months after the giving of such notice." The following sentence treats the case in which " such payment " is made by the mortgagee within six months after the purchaser, consonant with his " duty ", has given notice, and the fourth and last sentence, the case in which notice is given and the mortgagee fails to pay. If payment is made, the amount so paid is added to the amount of the mort-

gage " in like manner as if the same had been included " therein, and " the sale shall be of no further effect "; if the mortgagee fails to pay, the mortgagee " shall not be entitled to the benefit of the last preceding section of this title ", which, as already indicated, is the one dealing with the right of an " owner or claimant " to redeem.

It is conceded that the purchaser did not give the required notice, and our problem, therefore, is to determine the consequences of such omission. Plaintiff mortgagee maintains that by reason of that omission her right to nullify the tax sale, as prescribed in section 62, still persists. Defendant purchaser, on the other hand, contends that, despite his failure to give notice, the mortgagee's right to nullify the sale expired at the end of fifteen months — although, he asserts, such failure resulted in subordinating his interest as purchaser to the lien of the mortgage.

Upon defendant's motion for summary judgment, the court at Special Term decided in his favor, and the Appellate Division unanimously affirmed; both courts held that defendant's title is subject to the lien of plaintiff's mortgage and that such title could be extinguished by foreclosure of the mortgage. We are unable to agree with that determination and venture the thought that the unusual spectacle here presented of a contest between two interests, each claiming to be subordinate to the other, may well have been responsible for the result attained by the courts below.

It is well established that unpaid taxes constitute a lien upon the real estate against which they are assessed *prior and superior* to that of any mortgage. (See, e.g., *Lee* v. *Farone,* 261 App. Div. 674, 676, affd. 288 N. Y. 517.) And, when that lien is transmuted into a tax title or a tax lease upon a sale for taxes, the interest so derived is likewise paramount to the lien of a pre-existing mortgage and cannot be cut off or extinguished by its foreclosure. (See *Erie Co. Sav. Bank* v. *Schuster,* 187 N. Y. 111, 114–115; *Cromwell* v. *MacLean,* 123 N. Y. 474; *Stevens* v. *Breen,* 258 App. Div. 423, affd. 283 N. Y. 196; *Middle Is. Land & Water Co.* v. *Greis Co.,* 86 N. Y. S. 2d 282, affd. 274 App. Div. 998; *Gillespie* v. *Board of Supervisors of Broome Co.,* 178 Misc. 890, 891–893; see, also, 3 Weed, New York Real Property [3d ed., 1938], p. 1627.) That it suits defendant's purposes to pay plaintiff's mortgage rather than

permit plaintiff to pay him his statutory due — which would deprive him of his bargain purchase — should not lead us to deviate from settled principles or to overrule sound holdings.

The proposition that the tax sale did not per se affect, either favorably or adversely, the lien of plaintiff's mortgage, cannot be disputed (Elmira City Charter, § 62, 1st sentence). Before the sale, the mortgagee had the right to pay taxes in arrears (see, e.g., *Sidenberg* v. *Ely,* 90 N. Y. 257, 262; see, also, Real Property Law, § 254, subd. 6), and that right — which is all a mortgagee's right to redeem amounts to — was specifically made to survive a tax sale by section 62. It continues until barred in accordance with the terms of that section. To say that, even if and when the mortgagee is deprived of that right to redeem, the mortgage lien remains unaffected, because the right to foreclose the mortgage as against the owner's reversionary interest happens in this case to survive the tax sale, is to blind oneself to reality. Since the estate derived through the tax sale cannot be extinguished by the foreclosure and since the sale upon such foreclosure must be subject to the rent-free fifty-year lease acquired upon the tax sale, the right to foreclose is little more than illusory. Under the circumstances, therefore, to deprive the mortgagee of the right to redeem affects the lien of his mortgage in a most substantial way. The defendant purchaser was in a position to, and could, " affect " the lien of plaintiff's mortgage by complying with his " duty " to give notice as required by the second sentence of section 62. Since defendant was recreant in that " duty ", we should not bestow upon him benefits which would have accrued to him only if he had complied, and certainly we should not subject plaintiff mortgagee to a consequence which would follow only if the notice had been given and ignored.

The " duty " imposed upon the purchaser to give notice cannot reasonably be construed as optional or as designed for his benefit. It is a duty, unqualified and unconditional, owed to, and for the benefit of, the mortgagee; if there is a failure to obey it, the tax sale cannot in any manner affect the lien of his mortgage. In the case before us, therefore, plaintiff mortgagee has the right to redeem at any time until the expiration of six months after the defendant purchaser gives the notice required by the provisions of section 62.

The conclusion we reach finds strong, if not compelling, support in our decision in *Dunkum* v. *Maceck Bldg. Corp.* (256 N. Y.

275), wherein we construed provisions of a statute (Tax Law, L. 1855, ch. 427) almost identical with those of section 62 of the Elmira City Charter. In that case, we held that the failure of the purchaser at the tax sale to serve a notice to redeem, as required by the Tax Law's counterpart of section 62, permitted redemption by the mortgagee or his assignee at any time — it there was more than ten years — after the tax sale. We declared (256 N. Y., pp. 282–283): '' As no notice to redeem was ever served upon Sanders as the assignee of the mortgage or upon his assignor, as required by section 77, he had a legal right to redeem in 1880, when he paid the amount due and received a certificate of redemption from the State Comptroller. He had the same right, as assignee of the mortgage, that a mortgagee would have had. (Laws of 1885, ch. 427, § 80.) '' The statute in *Dunkum,* insofar as it deals with the effect of a tax sale upon the mortgage lien, the duty of the purchaser to give notice and the effect of payment by the mortgagee (§§ 76, 77, 78), is very like the provisions of section 62. The two statutes differ only with respect to the rights of a mortgagee, who, *having received notice* from the purchaser, fails to make payment. That provision was not before us in the *Dunkum* case, and it is not before us now; there, just as here, we dealt with the rights of a mortgagee to whom *notice was not given.* That the two statutes deal differently with a situation which did not arise in either case, cannot and does not detract from the authoritative weight to be given the decision that was made in the *Dunkum* case.[1]

---

1. As will be readily noted, the sole difference between the two statutes is that section 79 of the Tax Law in the *Dunkum* case — by its reference to section 76, the counterpart of the first sentence of section 62 of the Elmira City Charter — destroys the lien of the mortgage. Section 62, on the other hand — by its reference to the " preceding section ", section 61 — merely deprives the mortgagee of the right to redeem from the tax sale. This variation is dictated by the difference in the type of interest obtained by the purchaser under the two enactments. The fact that the tax purchaser receives an estate in fee under the *Dunkum* case statute made it necessary to provide for the elimination of the mortgage. Under the Elmira City Charter, however, where the purchaser receives only a leasehold interest, it was sufficient to extinguish the mortgagee's right to redeem, thus affording the purchaser complete protection during the term of the lease, the mortgage lien attaching only to the owner's reversionary interest after the expiration of the tax lease.

The decisions below and the views expressed by the dissent herein propound a doctrine — serious and far-reaching in its implications — at variance with established principle. They assert that the Elmira City Charter makes the lien of a mortgage paramount to a tax lien validly imposed upon specific real property, and that the title acquired by the purchaser at a tax sale is subordinate to then existing mortgages. So to construe the statute would substantially impair, if not totally destroy, the city's ability to collect taxes, and, as an inevitable result, the city's credit. Manifestly, the borrowing capacity of a municipality bears a direct relationship to its ability to collect taxes validly imposed by it. Impair that ability, and the structure upon which the city's credit rests is undermined. Its basis for obtaining credit would be, not the assessed valuation of the taxable real estate within its boundaries, but only the value of the equity of the owners thereof from time to time. The proper discharge of its governmental functions is so essential to the public health and welfare that the city should not be deprived of the wherewithal to perform them unless the legislature has so directed in language most clear and unequivocal. Neither in the Elmira City Charter read as a whole nor in any one of its provisions can even the suggestion of such a direction be found.

The judgment of the Appellate Division and that of the Special Term should be reversed, with costs in all courts, and plaintiff's motion for summary judgment granted.

DESMOND, J. (dissenting). This lawsuit raises but one question: does plaintiff mortgagee still have a right to redeem the mortgaged land from the 1947 Elmira City tax sale? The courts below correctly answered " no " to that question. Any right to redeem is purely statutory (*Levy* v. *Newman,* 130 N. Y. 11, 13; *Keely* v. *Sanders,* 99 U. S. 441, 445, 446), and, in this instance, the time limited therefor, by the only pertinent redemption statute (Elmira City Charter, § 61; L. 1906, ch. 477), has long since passed. The applicable part of section 61 is as follows: " Any owner or claimant of any parcel of real estate so sold, or of any specific part or undivided interest in or share of such parcel may, at any time before the expiration of fifteen months from the day of such sale, redeem the same by paying

to the purchaser, his representatives or assigns, or to the city chamberlain, for his or their benefit, the amount paid by him, with the addition of ten per centum per annum on such amount, and the expense of any publication, and all other expenses incurred by him or them and allowed by this act, for which expenses he or they shall have theretofore filed with the city chamberlain vouchers verified by his or their affidavit; and on such payment being made, the title acquired by such sale shall cease and determine.''

Thus, section 61, which, obviously, describes the redemption rights of mortgagees as well as of owners (see last sentence of section 62, hereinafter quoted), limits the redemption period to fifteen months after sale by the city of the unpaid tax. That fifteen-month period, in this instance, ended on some date prior to November 1, 1948, and with it ended forever any right of this mortgagee to redeem. Concededly, no tender, or offer to redeem, was made by the mortgagee until October, 1950.

There is nothing in any other part of the charter to change the plainly stated time limitation of section 61. Plaintiff's reliance on section 62 is misplaced. That section is, in full, as follows: '' No sale of real estate hereafter made for non-payment of any tax or assessment shall destroy, or in any manner affect, the lien of any mortgage thereon duly recorded or registered at the time of such sale, except as hereinafter provided. It shall be the duty of the purchaser at such sale to give to the mortgagee a written notice of such sale, requiring him to pay the amount of the purchase money, with interest at the rate allowed by the last preceding section hereof thereon, within six months after the giving of such notice. If such payment shall be made, the sale shall be of no further effect, and the mortgagee shall have a lien on the premises for the amount paid, with the interest which may thereafter accrue thereon at the rate of six per centum per annum, in like manner as if the same had been included in his mortgage. In case the mortgagee shall fail to make such payment within the time so limited he shall not be entitled to the benefit of the last preceding section of this title.''

Section 62, just above quoted, makes it the '' duty '' of the tax purchaser, to give a six-month notice to the mortgagee,

but there is no indication that failure, by the tax purchaser, so to do extends, for the mortgagee, the fifteen-month redemption time set by section 61. The patent purposes of section 62 are to keep the mortgage lien alive, but to make it possible for the tax purchaser, as against a mortgagee, to *shorten* the section 61 redemption period, by means of a six-month notice. Any doubt that such is the meaning of section 62 is removed by the last few words thereof, which say that, if such a six-month notice be served on the mortgagee and he fails to pay up the tax, he " shall not be entitled to the benefit of " section 61 (that is, the fifteen-month redemption privilege). In the present case, the tax purchaser failed to give the six months' notice, but such failure resulted only in the loss to him of his (§ 62) opportunity to shorten the mortgagee's fifteen-month redemption time.

The courts below, besides denying to plaintiff any continuing right to redeem (and thus answering correctly the question actually in litigation) went further, for adequate reasons, and held that, regardless of any section 62 notice given or not given, the mortgage lien survived the tax sale and the giving and recording of the lease by the city to the tax purchaser. Here, also, we think the lower courts were correct. Appellant seems to argue from some assumed common-law rule of taxation, to the effect that a deed or lease given by a municipality to a tax lien purchaser is always and necessarily prior and superior in rank to any mortgage, and that it, accordingly, cannot be cut off by foreclosure of the mortgage. But there is no general or common law of realty taxation. Collection, enforcement, sale and redemption as to such taxes is, in this State and elsewhere, completely controlled by the particular applicable statutes. The Elmira City Charter says (§ 62) that, unless the six-month notice be given to a mortgagee, no tax sale " shall destroy, or in any manner affect, the lien of any mortgage ". That, under the local law of Elmira, mortgage liens and their priorities survive tax sales, is made even plainer by another Elmira City Charter section (No. 59), which has, apparently, gone unnoticed: " Every lease or conveyance of real estate in said city, upon a sale for any tax, charge or assessment, made by the city chamberlain or any

other officer or person designated in pursuance of this act, shall convey the title to such estate as the same may create in such lands, and the right to the possession of the same from the time when such tax, charge or assessment became a lien, pursuant to the provisions of either of the said acts, *in preference to* any deed or conveyance of the said premises or *any general or specific lien thereon subsequent to that date* '' (emphasis supplied).

Section 59 must mean that as to liens, including mortgage liens, which are prior in time to a tax lease, the latter does *not* get priority. If we read that provision together with the statement of section 62, above quoted, that a mortgage lien is not to be destroyed or affected by a tax sale unless a six months' notice be given the mortgagee, the scheme of the statute becomes plain. Tax leases (which may be of very short duration) are not to have priority over existing mortgage liens. A mortgagee, like any other interested party, has fifteen months in which to redeem. Existing mortgage liens are in no way affected by a sale, except that a mortgagee's right to redeem may be cut off, short of fifteen months, by the giving to him of a six months' notice. Archaic and lacking in verbal precision though the Elmira City Charter may be, its meaning is not obscure, and that meaning cannot be adjusted to conform to court decisions, every single one of which construes and applies a different tax statute with substantially different provisions. For instance, in *Dunkum* v. *Maceck Bldg. Corp.* (256 N. Y. 275) on which much reliance is placed, the penalty imposed by a State-wide statute for a mortgagee's failure to pay after notice, was (see L. 1855, ch. 427, § 82) the loss to him of his lien's immunity from destruction, while in the Elmira statute, as pointed out above, the result of such failure to pay was no more than the shortening of the mortgagee's redemption time. Such statutory differences are not casual or unsubstantial. Likewise, as to the cases cited for the proposition that a tax lease is paramount to, and cannot be cut off by, a pre-existing mortgage, each of those decisions dealt with widely varying statutory language. Quite obviously, none of them attempted to set down a rule that, regardless of and in the teeth of statutory provisions, a mortgage must always be subordinate in lien to a tax lease.

The decision below was in complete conformity to the Elmira City Charter and should be upheld. Under it the mortgagee lost his right to redeem because of expiration of time, but retained his prior lien, just as the statute says.

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS and FROESSEL, JJ., concur with FULD, J.; DESMOND, J., dissents in opinion in which CONWAY and DYE, JJ., concur.

Judgments reversed, etc.