B.D. PARKER, Jr., Circuit Judge.
 

 Chapter 11 Trustee L. David Zube appeals on behalf of plaintiffs-appellants Bur-nell G. and Alice Carney from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr.,
 
 Chief
 
 Judge). The district
 
 *165
 
 court dismissed the Carneys’ claim that defendant-appellee attorney James V. Phi-lippone committed legal malpractice by not advising them to file for bankruptcy protection before the expiration of their right under local law to redeem property subject to tax sale. The principal issues on this appeal are whether the district court correctly concluded that collateral estoppel barred relitigation of a bankruptcy court’s determination that the Carneys had lost their right of redemption before they retained Philippone and, if not, whether the Carneys had lost this right under applicable state law.
 

 We find that collateral estoppel does not apply. Moreover, the Carneys’ right of redemption may be governed by §§ 6, 8, and 9 of the Onondaga County Tax Act, sections we have been unable to harmonize. We conclude that we have insufficient direction from the courts of New York to determine under the Tax Act (1) when the right of redemption expires or (2) who constitutes an occupant. We therefore certify these questions to the New York Court of Appeals, respectfully requesting its guidance.
 

 BACKGROUND
 

 The following facts are not disputed. Between 1972 and 1993, the Carneys operated Sunnyside Nursing Home and Sunny-side Adult Home on two parcels of land (treated as one for tax purposes), totaling approximately 6.51 acres, which the couple owned in Manlius, New York. In the 1990s, the Carneys began to experience financial difficulties and fell into deep arrears on their real estate taxes.
 

 The Carneys failed to pay real estate taxes for 1993 and 1994, ultimately owing the County of Onondaga $61,834.29 for 1993 and $61,970.79 for 1994. On October 1,1993, the county sold a tax certificate for the property, pursuant to the Onondaga County Tax Act (N.Y. Unconsol. Laws 1937, Chapter 690, as amended) (the “Tax Act”). On October 1,1994, the county sold another tax certificate. At both tax sales, the county bought the certificates. In December 1994, the county resold them to Tax Certificate Associates, Inc. (“TCA”).
 

 Meanwhile, in September 1994, the Carneys borrowed $300,000 from Adirondack Capital Management, Inc. (“ACM”), a corporation whose principals were Richard and Diane Corvetti. The loan was secured by a mortgage on the Carneys’ property. Shortly thereafter, the Carneys defaulted on the mortgage, and in November 1995 ACM commenced a foreclosure proceeding. In settling this action, the Carneys agreed to deliver a deed in lieu of foreclosure to ACM, which was to be held in escrow as security against further defaults.
 

 Soon the Carneys were again delinquent on their mortgage payments and in violation of their escrow agreement with ACM. Accordingly, in late May or early June 1996, they retained Philippone to handle litigation with ACM. In July 1996, Philip-pone negotiated a settlement between the Carneys and ACM. The Carneys agreed to transfer title to the portion of the property containing the nursing home to a newly formed corporation, SNH Corporation, while retaining title to the property containing the adult home for themselves. SNH Corporation would sell the nursing home property in order to satisfy the mortgage, and the Carneys and ACM would each receive 50 percent of the net sale proceeds after the payment of the ACM mortgage and all outstanding taxes, liens, and expenses.
 

 Under section 6 of the Tax Act, if an owner fails to pay the delinquent taxes necessary to redeem real property, the certificate holder is entitled to apply to the county for a deed to the property. This
 
 *166
 
 section also provides that before the county can transfer title to a certificate holder, the holder must give the owner and occupant six months’ notice to redeem the property. On November 8, 1996, TCA sent such notice to the Carneys. On December 24, 1996, TCA sold the tax sale certificates to the Corvettis, who two days later sent a new six-month notice to the Carneys. In May 1997, after further litigation, the Corvettis stipulated that they would not apply for a deed to the property before June 26, 1997. The Carneys never redeemed the property, and, on June 26, the Corvettis applied to the Onondaga County Clerk for a deed.
 

 On July 24, Philippone advised the Carneys to file for bankruptcy protection under Chapter 11 of the Bankruptcy Code, and they did so the following day. The county had not yet delivered the deed to the Corvettis and, when the county learned of the Carneys’ bankruptcy filing, it concluded that delivery of the deed to the Corvettis would violate the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362. On August 13, 1997, the Corvettis applied to the bankruptcy court (Stephen D. Gerling,
 
 C.J.)
 
 for relief from the automatic stay, and the court concluded:
 

 The Debtors had two years from October 1; 1993, to redeem the Premises by paying all taxes and interest due and owing. The Corvettis complied with § 6 of the Tax Act by sending the required notice to the Debtors on December 26, 1996, which apprised the Debtors that pursuant to § 6 of the Tax Act “in order to redeem said property the total amount due must be paid to the Onondaga county commissioner of finance within six months from the date of mailing of said notice.” There is nothing in the language of § 6 of the Tax Act that expressly precludes the Debtors from exercising their right to redemption within the six month period referenced in the required notice. However, the Court need not mak[e] any definitive finding on this issue as the Debtors failed to [] redeem any interest they might have had in the Premises within not only the first two years after the tax sale but also within the six month period set forth in the Notice to Redeem.
 

 In Re Carney,
 
 No. 97-64556 (Bankr.N.D.N.Y.) (Mem.-Decision, Findings of Fact, Conclusions of Law and Order of Oct. 9, 1997, at 9). The court lifted the stay, permitting the Corvettis to obtain the deed to the property. The Corvettis subsequently sold the property.
 

 In May 2000, L. David Zube, the Carneys’ Chapter 11 Trustee, brought an adversary proceeding against Philippone, claiming that Philippone had committed malpractice by failing to advise the Carneys to file for bankruptcy prior to June 26, 1997, before which point the automatic stay would have allegedly preserved the Carneys’ right of redemption. The bankruptcy court transferred the case to the District Court for the Northern District of New York for a determination of whether it should be withdrawn from the bankruptcy court. On May 30, 2001, the district court ordered this withdrawal.
 

 In July 2001, Philippone moved to dismiss the Trustee’s action pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56. The court concluded that, under principles of collateral estop-pel, the bankruptcy court’s decision that the Carneys had lost their interest in the property by October 1, 1995 at the latest, eight months before they first employed Philippone, barred their malpractice claim. Accordingly, the court granted Philip-pone’s motion for summary judgment. Zube appealed.
 

 
 *167
 

 DISCUSSION
 

 We review the district court’s grant of summary judgment
 
 de novo. See Allstate Ins. Co. v. Mazzola,
 
 175 F.3d 255, 258 (2d Cir.1999). We also review
 
 de novo
 
 the district court’s determination of state law.
 
 See McCarthy v. Olin Corp.,
 
 119 F.3d 148, 153 (2d Cir.1997). ‘Where the law of the state is uncertain or ambiguous, we will carefully predict how the highest court of the state would resolve the uncertainty or ambiguity.”
 
 Bank of N.Y. v. Amoco Oil Co.,
 
 35 F.3d 643, 650 (2d Cir.1994).
 

 In order to prevail in a legal malpractice action under New York law, a plaintiff must establish that the attorney “faded to exercise that degree of care, skill and diligence commonly possessed and exercised by an ordinary member of the legal community, that such negligence was the proximate cause of the actual damages sustained by [plaintiff,] and that but for the [attorney’s] negligence, [plaintiff] would have been successful in the underlying action.”
 
 Campcore, Inc. v. Mathews,
 
 261 A.D.2d 870, 689 N.Y.S.2d 814, 815 (4th Dep’t) (mem.) (internal quotation marks and citation omitted),
 
 lv. denied,
 
 93 N.Y.2d 814, 697 N.Y.S.2d 561, 719 N.E.2d 922 (1999);
 
 see also Davis v. Klein,
 
 88 N.Y.2d 1008, 1009-10, 648 N.Y.S.2d 871, 671 N.E.2d 1268 (1996) (mem.). “For a defendant in a legal malpractice case to succeed on a motion for summary judgment, evidence must be presented in admissible form establishing that the plaintiff is unable to prove at least one of these essential elements.”
 
 Oot v. Arno,
 
 275 A.D.2d 1023, 713 N.Y.S.2d 382, 383 (4th Dep’t 2000) (mem.) (quoting
 
 Ippolito v. McCormack, Damiani, Lowe & Mellon,
 
 265 A.D.2d 303, 696 N.Y.S.2d 203, 204 (2d Dep’t 1999)).
 

 In addition to its application of collateral estoppel, the district court also concluded that the Carneys sustained no damages as a result of Philippone’s alleged negligence because they had lost their right to redeem the property before they retained him. To evaluate these conclusions, we turn to the Tax Act.
 
 [1]
 

 I. The Onondaga County Tax Act
 

 Section 8 of the Tax Act provides tax-delinquent owners and occupants with a right of redemption for real property purchased at tax sales:
 

 The owner, or any other person at any time within two years from the last day of [the tax] sale, and the occupant or holder of any mortgage duly recorded at the time of the sale thereof at any time within three years after the sale and not thereafter, may redeem any property sold for taxes ... by paying to the county commissioner of finance, for the use of the county, or if such purchaser be a private purchaser for the use of such purchaser or those claiming under him, as the case may be, the sum mentioned in the certificate of sale with interest thereon at the rate of twelve percent per annum to be calculated from the date of such certificate.
 

 Tax Act, § 8, ¶ 98-838 (“Section 8”).
 

 Under section 9, the county commissioner of finance must,
 

 at least three months before the expiration of the time allowed for the redemption of lands sold by him for taxes,
 
 *168
 
 cause a notice to be published once in each week for two weeks successively in at least one newspaper pubhshed in said county, containing a hst of the lands in such county sold for taxes and unredeemed specifying particularly every parcel unredeemed, and the amount necessary to redeem the same, calculated to the last day in which such redemption can be made, and stating that, unless such lands are redeemed by a specified day, they will be conveyed to the county, or if such purchaser be a private purchaser, to such private purchaser .... Until such notice of expiration of time to redeem shall have been pubhshed, as herein provided, the time to redeem shall not be deemed to have expired.... No other, further or different notice of the expiration of the time to redeem shall be required to be pub-hshed, served upon or given to any person whatever. If such real estate sold for taxes, or any portion thereof be not redeemed, as herein provided, the county commissioner of finance may execute to the board of supervisors of the county, in trust for such county, or to its assigns, or if such purchaser be a private purchaser, to such private purchaser, his heirs or assigns, a conveyance of the real estate so sold, and unredeemed, which shall vest in the grantee an absolute estate in fee, free from ah hens, claims or incumbrances of every name and nature whatsoever, subject only to the right of redemption on the part of the holder of a mortgage, as provided herein, and to such claims as the county may have thereon for taxes.
 

 Tax Act, § 9, ¶ 98-839 (“Section 9”). Where, as here, the county buys a tax certificate at a tax sale, the commissioner of finance may resell and assign the certificate “at any time before the expiration of three years after the date of the tax sale.” Tax Act, § 6, ¶ 98-836 (“Section 6”). If a property is not redeemed “within said three year time limit in the manner set forth in section eight of this act, the commissioner of finance upon written application shall execute to the purchaser a conveyance of the real property sold, the description of which shall include a specific statement of the title or interest thereby conveyed.”
 
 Id.
 

 Since its enactment in 1937, Section 9 has provided that “[n]o other, further or different notice of the expiration of the time to redeem [apart from the publication of such notice in a local newspaper] shall be required to be pubhshed, served upon or given to any person whatever.” Section 6, however, was amended in 1971 to require a certificate holder to serve a “notice to redeem” upon the record owner and occupant before title can pass to the certificate holder, but no corresponding change has been made to Section 9:
 

 Before making such application [to the county commissioner for conveyance of title] the owner of a tax sale certificate acquired subsequent to the effective date of this act shall serve a notice to redeem by certified or registered mail, return receipt requested, upon the record owner, mortgagee, if any, and occupant, if any, of the real property affected by said tax sale certificate ....
 

 Tax Act, § 6, ¶ 98-836. According to Section 6, a “notice to redeem” must describe the property, declare the amount due on account of the tax sale certificate, specify relevant interest rates and fees, and contain “a statement that in order to redeem said property the total amount due must be paid to the Onondaga county commissioner of finance within six months from the date of mailing of said notice.” Finally, this section states,
 

 [i]f the real property described in said notice is not redeemed within the time limited, the commissioner of finance
 
 *169
 
 shall upon said written application and the surrender of the certificate of tax sale together with proof by affidavit of service by certified or registered mail of the notice to redeem, execute and deliver the conveyance to the purchaser as hereinbefore set forth.
 

 Tax Act, § 6, ¶ 98-836.
 

 We find nettlesome inconsistencies in these provisions. Section 8 permits an “owner” to redeem within two years of a tax sale, whereas an “occupant” can redeem within three years of such a sale “and not thereafter.” Section 6, however, can be read to provide that, even if two or three years pass after a tax sale, a certificate holder must still serve a notice to redeem upon the owner and occupant before the county can convey title. Section 6 also implies that, following service of this notice, the owner and occupant will have another six months to redeem the property. Thus, under one section of the statute — Section 8 — the right to redeem appears to be cleanly cut off after three years, in the case of occupants, and two years, in the case of owners. However, another section of the same statute — Section 6 — apparently provides that a right to redeem is
 
 never
 
 terminated until six months after a notice to redeem has been served.
 
 [2]
 
 If the six-month notice is never served, does a right to redeem exist in perpetuity?
 
 [3]
 
 To complicate matters, the Tax Act does not define “occupant.” Consequently, it is unclear whether this term applies to the Carneys, who ran a nursing home and an adult home on their property, or whether “occupant” is synonymous with “resident.”
 
 See generally Blackgold Realty Corp. v. Milne,
 
 119 A.D.2d 512, 501 N.Y.S.2d 44, 46 (App. Div. 1st Dept 1986) (involving “commercial occupants”).
 

 II. The Bankruptcy Court Decision
 

 The district court found that, regardless of the problems inherent in interpreting the Tax Act, the bankruptcy court’s decision collaterally estopped the Trustee’s assertion of claims against Philippone. Under the general principles of collateral estoppel
 
 [4]
 
 :
 

 a judgment in a prior proceeding bars a party and its privies from relitigating an
 
 *170
 
 issue if, but only if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support, a valid and final judgment on the merits.
 

 N.L.R.B. v. Thalbo Corp.,
 
 171 F.3d 102, 109 (2d Cir.1999) (internal quotation marks omitted).
 

 In this case, the bankruptcy court expressly refrained from deciding the relationship between the six-month window that opens after a notice to redeem is served under Section 6 and any absolute cut-off of a debtor’s ability to redeem, apparently provided by Section 8. Rather, the bankruptcy court merely addressed the question of whether the Carneys had
 
 any
 
 interest in the property at the time they declared bankruptcy in July 1997. Indeed, after flagging the apparent conflict between Sections 6 and 8, the bankruptcy court stated:
 

 [T]he Court need not mak[e] any definitive finding on this issue
 
 as the Debtors failed to [] redeem any interest they might have had in the Premises within not only the first two years after the tax sale but also within the six month period set forth in the Notice to Redeem.
 

 In Re Carney
 
 (Mem.-Decision, Findings of Fact, Conclusions of Law and Order of Oct. 9,1997, at 9 (emphasis added)).
 

 The bankruptcy court predicated its decision upon the Carneys’ failure to exercise their right of redemption but withheld its opinion as to when this right was extinguished. The bankruptcy court thus made no finding on the issues before us, namely, whether (1) the Carneys had a right to redeem anytime during the six months after receiving the Corvettis’ notice to redeem, (2) the seemingly absolute cut-offs of Section 8 applied, and (3) the Carneys were occupants for purposes of the Tax Act. The bankruptcy court merely identified the first two of these issues and did not mention the third.
 
 [5]
 
 Since the bankruptcy court did not decide the issues raised by the Trustee’s claim, collateral estoppel does not preclude the claim.
 
 See, e.g., Hachamovitch v. DeBuono,
 
 159 F.3d 687, 695 (2d Cir.1998) (noting that an issue must have been “actually and necessarily decided in a prior proceeding” for collateral estoppel to apply);
 
 Buechel v. Bain,
 
 97 N.Y.2d 295, 303-04, 740 N.Y.S.2d 252, 766 N.E.2d 914 (2001) (“There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action .... ”);
 
 Newin Corp. v. Hartford Accident & Indem. Co.,
 
 37 N.Y.2d 211, 216, 371 NY.S.2d 884, 333 N.E.2d 163 (1975). (holding that an issue was not precluded where earlier proceedings did not necessarily decide the issue).
 

 III. The Expiration of the Carneys’ Right of Redemption
 

 The district court stated that even if it were not bound by collateral estoppel, it would still find that the Carneys’ right of redemption had expired prior to their hiring of Philippone. Obviously, if their right to redeem expired before they hired Phi-lippone, his failure to advise them to file for bankruptcy earlier could not have
 
 *171
 
 caused them injury. The Carneys retained Philippone in late May or early June 1996. Later that year, on November 8 and December 26, two notices to redeem were mailed to the Carneys. Ultimately, the second notice — served by the Corvet-tis — was the basis for their application to the county to transfer title to them.
 

 Applying different interpretations of the Tax Act, we can conceive of three different dates when the Carneys’ right of redemption expired, with varying consequences for their malpractice action. First, if the Carneys’ right to redeem extended until six months after they received notice from the Corvettis, then Philippone was the Carneys’ attorney during the relevant period. Second, if the Carneys’ right to redeem as owners was extinguished two years after the October 1, 1993 tax sale, then they did not retain Philippone until after their right to redeem had expired. Finally, if the Carneys were occupants of the property for the purposes of Section 8 and therefore had three years after the tax sale to redeem, then the Carneys hired Philippone before they lost their right of redemption. Given the Tax Act’s textual ambiguities, we find it difficult to determine which of these three interpretations to adopt.
 

 The district court and the Carneys place much faith in the New York courts’ discussions of the Tax Act and other county tax acts, but we find that these rare cases provide little illumination. For example, the court below primarily relied upon
 
 McHugh v. Appler,
 
 173 A.D.2d 910, 569 N.Y.S.2d 773 (3d Dep’t 1991), in interpreting the Tax Act. (Menu-Decision and Order of June 5, 2002 at 11.) But that case' involved the interpretation of Ulster County tax laws, not the Onondaga County Tax Act. We do not find
 
 McHugh
 
 helpful, as it does not address any provision equivalent to Section 6 of the Onondaga County Tax Act.
 

 The Carneys, in contrast, cite
 
 Burden v. Max Mor Development Co.,
 
 53 A.D.2d 1047, 386 N.Y.S.2d 271 (App. Div. 4th Dep’t 1976) (mem.), for the proposition that a notice to redeem, whenever served, triggers a six-month window in which a tax-delinquent owner or occupant can redeem property. In
 
 Burden,
 
 Onondaga County obtained a tax sale certificate on a parcel of Burden’s property in October 1970, which was subsequently sold to Max-Mor. More than three years after the tax sale, Max-Mor received a deed to the land, even though it had failed to give the six-month notice required by Section 6. Burden sued. The Appellate Division affirmed the grant of summary judgment to Burden, concluding that she would own the land “upon payment ... of certain specified sums of money.”
 
 Id.
 
 at 273.
 

 Burden,
 
 however, presents two problems. First, the court never expressly decided that the right to redeem extends over the six-month period no matter when the notice is served. Second, the court discussed the relevant statutory periods as follows: “The statute provides that a tax sale purchaser first receive a tax sale certificate. During the six-month redemption period that follows and before the owner of the tax sale certificate is entitled to obtain a tax deed, such tax sale certificate owner ‘shall serve a notice to redeem ....’”
 
 Id.
 
 The statement that a six-month redemption period “follows” a tax sale — and is the period during which a notice to redeem can be served — runs counter to any reading we would be inclined to give the Tax Act.
 

 The smattering of other state cases that refer to the Tax Act sheds no more light than
 
 Burden.
 
 They have either been outdated by amendments to the Tax Act, see,
 
 e.g., Destefano v. Kaufman,
 
 66 Misc.2d
 
 *172
 
 302, 320 N.Y.S.2d 825 (Sup.Ct. Onondaga Cty.1971),
 
 Geddes Sav. & Loan Ass’n v. Malvasi,
 
 60 Misc.2d 1053, 304 N.Y.S.2d 527 (Sup.Ct. Onondaga Cty.1969), or contain no relevant treatment of the right of redemption,
 
 see, e.g., Interco Realty Corp. v. Perkins,
 
 49 A.D.2d 189, 374 N.Y.S.2d 215 (4th Dep’t 1975);
 
 First Tower Corp. v. French,
 
 45 A.D.2d 147, 356 N.Y.S.2d 905 (4th Dep’t 1974).
 

 IV. Certification
 

 Under § 0.27 of the Rules of the Second Circuit, “[w]here authorized by state law, this Court may certify to the highest court of a state an unsettled and significant question of state law that will control the outcome of a case pending before this Court.” Finding the existing state caselaw regarding the Tax Act to be unhelpful, we cannot harmonize Sections 6, 8, and 9 of the Tax Act. Moreover, we cannot determine whether the term “occupant” applies to the Carneys. We find these anomalies significant because of the conspicuous lack of clarity as to the procedures that must be followed before property owners in Onondaga can lose their property. This lack of clarity implicates constitutional due-process concerns.
 

 “ ‘New York has a strong interest in deciding the issue certified rather than having the only precedent on point be that of the federal court, which may be mistaken.’ ”
 
 Great N. Ins. Co. v. Mount Vernon Fire Ins. Co.,
 
 143 F.3d 659, 662 (2d Cir.1998) (quoting
 
 Home Ins. Co. v. Am. Home Prods. Corp.,
 
 873 F.2d 520, 522 (2d Cir.1989)). Accordingly, pursuant to § 500.17 of the Rules of the New York Court of Appeals, 22 N.Y.C.C.R. § 500.17, we respectfully certify the following questions to the New York Court of Appeals:
 

 (1) Under the Onondaga County Tax Act, is an owner’s right to redeem his property, after its sale for taxes, strictly limited to two years even when the tax sale purchaser fails to send the owner a notice to redeem during that period? Or does the right of redemption survive until six months after the tax sale purchaser sends a notice to redeem, even if that six-month period ends more than two years after the tax sale?
 

 (2) Does the term “occupant” in section 8 of the Onondaga County Tax Act include an individual who operates a business on a property but does not reside there? If an individual is both an owner and an occupant, does he have three years following a tax sale in which to redeem the property?
 

 We invite the New York Court of Appeals to expand or narrow these questions as necessary. It is therefore ordered that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of briefs and appendices filed in this Court by the parties.
 

 CERTIFICATE
 

 The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to 2d Cir. R. § 0.27 and 22 N.Y.C.C.R. § 500.17, as ordered by the United States Court of Appeals for the Second Circuit.
 

 [1]
 

 . Philippone argues that we need not interpret the Tax Act because, assuming
 
 arguendo
 
 that his conduct constituted malpractice, there was no proof that the Carneys were damaged. He contends that the Carneys could not have profitably sold the property after redeeming it. This is hardly clear as a matter of law. The record demonstrates that the Corvettis sold the property in December 1999 for $1,650,000, significantly more than the taxes owed on the property for 1993 and 1994.
 

 [2]
 

 , It is also unclear whether the Tax Act's drafters envisioned a notice to redeem as accelerating the two- or three-year period specified in Section 8. Under the interpretation of the statute given by the district court, the county commissioner could hold a tax sale immediately after the taxes are due, and the buyer of the tax certificate could immediately serve notices to redeem upon the owner and occupant, giving them only six months in which to redeem instead of the two or three years provided by Section 8.
 

 [3]
 

 . In dealing with tax statutes other than the Onondaga County Tax Act, the New York Court of Appeals has enforced or at least entertained the principle that a notice to redeem is an absolute requirement before a statutory right of redemption is extinguished.
 
 See, e.g., Swidler v. Knocklong Corp.,
 
 305 N.Y. 527, 537, 114 N.E.2d 25 (1953) (involving Nassau County Administrative Code) ("The best that appellants can claim, from this situation, is that because of the failure to give the notice to redeem ... their time to redeem is still running, possibly ....");
 
 McCarthy v. Emma,
 
 304 N.Y. 153, 158, 106 N.E.2d 497 (1952) (dealing with Elmira City Charter) ("[P]laintiff ... has the right to redeem
 
 at any time
 
 until the expiration of six months after the defendant purchaser gives the notice required ....” (emphasis added));
 
 Dunkum v. Maceck Bldg. Corp.,
 
 256 N.Y. 275, 282-83, 176 N.E. 392 (1931) (applying New York State Tax Law) ("As no notice to redeem was ever served upon ... the assignee of the mortgage ... he had a legal right to redeem in 1880 [14 years after the tax sale] .... ”).
 

 [4]
 

 .We need not decide whether federal or state law governs the preclusive effect of the bankruptcy court's decision, as both "federal and New York principles of
 
 res judicata
 
 and judicial estoppel lead ... to the same result.”
 
 Maharaj v. Bankamerica Corp.,
 
 128 F.3d 94, 97 (2d Cir.1997).
 

 [5]
 

 . Although the bankruptcy court referred to "the first two years” after the tax sale, suggesting that it considered the Carneys owners under Section 8, the court's logic could also apply to a situation in which the Carneys, as occupants, would have had
 
 three
 
 years from the tax sale to redeem the property, as the Carneys did not redeem it within those three years. In any case, we do not find the bankruptcy court opinion determinative of whether the Carneys were occupants for purposes of the Tax Act.