Charles M. CERNY, Plaintiff,

v.

Gregory F. RAYBURN,
et al., Defendants.

No. 11–cv–3263 (SLT)(VVP).

United States District Court,
E.D. New York.

Aug. 20, 2013.

Charles M. Cerny, Brooklyn, NY, pro se.

Douglas Adam Rappaport, Isabelle Rose Liberman, Roxanne Tizravesh, Akin Gump Strauss Hauer & Feld LLP, New York, NY, Justin Y.K. Chu, Steptoe & Johnson LLP, New York, NY, Benjamin Shapiro, Cindy Forman, Shapiro, Rodarte & Forman, LLP, Santa Monica, CA, for Defendants.

### MEMORANDUM AND ORDER

TOWNES, District Judge:

Charles M. Cerny ("Plaintiff"), proceeding *pro se*, brings this action against FTI Consulting ("FTI"), Gregory F. Rayburn, and Michael Tucker, (together, the "FTI Defendants"), Greenberg Traurig and Nancy A. Mitchell (together, the "Greenberg Traurig Defendants"), and Silver Point Finance ("Silver Point") (collectively, "Defendants"). The amended complaint also identifies twenty unnamed defendants listed as John Does 1–20. Plaintiff, asserting state and federal claims, alleges that Defendants engaged in various acts of fraud that caused the loss of his investment in Syntax–Brillian Corporation ("SBC"). The FTI Defendants, the Greenberg Traurig Defendants, and Silver Point

have all filed separate motions to dismiss Plaintiff's amended complaint. For the reasons that follow, Defendants' motions to dismiss are all granted.

## I. STANDARDS OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. If a party does not "nudge[ his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

■ Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint ... or, more accurately, the sufficiency of the statements in the complaint," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991) (internal citations omitted), materials outside the four corners of the complaint are "generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). However, a court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (citing *Cortec Indus., Inc.*, 949 F.2d at 47–48). The Second Circuit has clarified, however, that mere notice or possession of a document is not enough, and a plaintiff must have *relied* on the document in drafting the complaint. *See U.S. v. Int'l Longshoremen's Ass'n*, 518 F.Supp.2d 422, 452 (E.D.N.Y.2007) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)).

■ Moreover, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000).

## II. BACKGROUND

Except where indicated, the following facts are drawn from the amended complaint ("AC"), documents attached to that complaint, and relevant filings in the related bankruptcy court proceedings. All facts are construed in a light most favorable to Plaintiff, the party opposing dis-

missal.[1]

In 2005, a merger between Syntax Groups Corporation and Brillian Corporation resulted in a new corporate entity, SBC. *In re Syntax–Brillian Corp.,* 2011 WL 3101809, at *1 (Bankr.D.Del. July 25, 2011). SBC was a public company engaged in the manufacture and distribution of high-definition televisions under the "Olevia" brand name, although Plaintiff asserts that the company was established solely to perpetrate fraud. (Plaintiff's Affidavit attached to the AC at 7.) Plaintiff was an investor-shareholder in SBC. (AC ¶ 1.) Although the exact date is unclear, at some point prior to filing its petition for bankruptcy, SBC retained FTI to provide business advice and crisis management. *In re Syntax–Brillian Corp.,* 400 B.R. 21, 23 (Bankr.D.Del.2009). In connection with SBC's arrangement with FTI, Gregory Rayburn, a partner with FTI, was appointed to serve as SBC's Chief Restructuring Officer. *Id.*

## A. The Bankruptcy Proceedings

On July 8, 2008, SBC and its affiliates filed a petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court in the District of Delaware.[2] (Bankruptcy Case No. 08–11407 ("Bankr. Dkt.") No. 1.) That same day, Rayburn filed an affidavit (the "Rayburn Affidavit") with the bankruptcy court in support of SBC's petition. In that affidavit, Rayburn assessed SBC's financial state, described certain factors that gave rise to SBC's bankruptcy filing, and moved for the court's approval of a proposed sale of SBC assets. (Bankr. Dkt. No. 3; AC Ex. C ¶ 5.) The Rayburn Affidavit provided the evidentiary predicate for various motions and applications filed by SBC in the bankruptcy proceedings. *In re Syntax–Brillian Corp.,* 400 B.R. at 24. SBC was represented in the bankruptcy proceedings by Greenberg Traurig. *Id.* at 22.

### 1. Allegations of Fraud Regarding the Asset Purchase Agreement

Prior to SBC filing its petition for bankruptcy, SBC and Olevia International Group, ("OIG") entered into an Asset Purchase Agreement ("APA"), whereby SBC agreed to sell substantially all of its assets to OIG. (AC ¶¶ 22–24; *In re Syntax–Brillian Corp.,* 400 B.R. at 22. FTI, Rayburn, and Silver Point participated in the negotiations of the APA. (AC Ex. K. at 4, 8.) Greenberg Traurig advised on the APA and participated in its preparation. (*Id.* at 2.) On July 8, 2008, the same day SBC filed its bankruptcy petition, the company sought court approval for the sale pursuant to the APA. (Bankr. Dkt. No. 16 ¶¶ 14, 68.)

By letter dated July 16, 2008, Ahmed Amr, one of Plaintiff's fellow SBC shareholders, filed in the bankruptcy court objections to the proposed sale of SBC assets. (Bankr, Dkt. No. 86.) In opposing

---

1. The court takes judicial notice of the publicly available and relevant filings in the related bankruptcy litigation for the limited purposes of establishing the "fact of such litigation and related filings," *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir.1998), and in order to determine "the[ir] preclusive effect." *Sure–Snap Corp. v. State St. Bank & Trust Co.,* 948 F.2d 869, 872 (2d Cir.1991) (taking judicial notice of bankruptcy court findings to determine their preclusive effect); *see also Lefkowitz v. Bank of New York,* 676 F.Supp.2d 229, 249 (S.D.N.Y.2009) ("Judicial notice may encompass the status of other lawsuits, including [those] in other courts, and the substance of papers filed in those actions.").

2. The debtors in the underlying bankruptcy proceeding were listed as Syntax–Brillian Corporation and its affiliates, Syntax–Brillian SPE, Inc., and Syntax Groups Corporation. For simplicity, the court refers to these entities collectively as "SBC."

the proposed sale, Amr alleged that the APA negotiations had not been conducted at arms length due to impermissible conflicts of interest between the parties and that there were "outright fraud issues" with the structure of the transaction that needed to be investigated. (*Id.*) By letters dated July 21, 2008 and August 11, 2008, Plaintiff filed with the bankruptcy court his own sets of objections. Plaintiff echoed the fraud concerns raised by his fellow shareholder and asked the court to refuse to approve the proposed sale, citing his suspicion that "certain parties including the proposed buyer may be using funds that were obtained from questionable dealings with SBC," and his discovery of "omissions and peculiarities" in the Rayburn Affidavit regarding certain of SBC's undertakings. (Bankr, Dkt. Nos. 87 and 277.) These shareholders also raised specific concerns about certain assets—the Bird's Nest inventory and the South China House of Technology ("SCHOT") and Olevia Far East ("OFE") receivables—that they believed were fraudulent.

On August 20, 2008, an auction of SBC's assets was held and OIG was the only bidder. *In re Syntax–Brillian Corp.*, 400 B.R. at 22. Tucker, an FTI employee, introduced OIG as the buyer. (AC ¶ 16, AC Ex. K at 5.) Later that same day, the bankruptcy court held a hearing to address objections to the sale of SBC's assets—including those filed by Plaintiff and Amr—and to determine whether it would approve the proposed sale of SBC's assets. Rayburn was the sole witness and, in his direct testimony, he described in some detail the negotiations and preparation of the APA and the structure of the proposed sale. (Bankr. Dkt. No. 380 at 55–75.) The court also heard extensive testimony on the specific allegations of fraud raised by Plaintiff and his fellow shareholder. Plaintiff did not attend the hearing, but the court permitted Amr to cross-examine

Rayburn and heard testimony on the alleged conflicts of interest between the parties, the alleged fraudulent structure and nature of the proposed sale, the allegedly fraudulent nature of the purchaser, as well as the allegedly fraudulent nature of the assets set to be transferred via the sale—many of the issues that serve as the foundation for Plaintiff's claims here. (*Id.* at 88–142.)

After listening to Rayburn's testimony and considering the objections, the bankruptcy court decided to allow the sale to proceed, concluding that SBC had established that the sale represented the exercise of the company's best business judgment. (*Id.* at 176–77.) The bankruptcy court specifically addressed the fraud allegations raised by Plaintiff and the other shareholders, noting Rayburn's direct testimony "as to the nature and progress of the negotiations, the good faith of the purchaser and other parties in the process." (*Id.* at 178.) Based on that testimony, the court concluded that the "sale is being proposed in good faith, and that it was negotiated at arm's length by sophisticated parties represented by counsel and assisted by other professionals." (*Id.*) As to the allegedly fraudulent assets—the Bird's Nest inventory and the SCHOT and OFE receivables—the court again found Rayburn's testimony credible and concluded that the transfer of these assets was not fraudulent. (*Id.* at 178–79.) In closing, the bankruptcy court acknowledged the "losses that have been suffered by shareholders in the case," but noted that "there is absolutely nothing in the record before [it] that would support the proposition that an alternative transaction exists or that a reorganization strategy exists that would maintain or result in shareholder value here." (*Id.* at 180.) The court accordingly approved the sale. (*Id.*) Plaintiff did not appeal this order, although, from the rec-

ord before the court, it appears that the sale of SBC's assets has yet to close. (Plaintiff's Opposition ("Pl. Opp") at 2.)

### 2. Allegations that Defendants Defrauded the Bankruptcy Court

On September 3, 2008, the bankruptcy court, over opposition from SBC, Silver Point, and others, appointed an examiner to investigate shareholder allegations of fraud and misconduct by SBC's former officers and directors and certain pre-petition business dealings between SBC and their suppliers and business partners. (Bankr. Dkt. No. 366); *In re Syntax–Brillian Corp.*, 400 B.R. at 23. On October 22, 2008, the examiner reported that there was substantial reason to believe that SBC had been defrauded by its vendors or business partners in the Far East and that SBC's pre-petition management was either complicit in such wrong-doing or negligent in allowing it to occur. *In re Syntax–Brillian Corp.*, 400 B.R. at 23.

Based on the examiner's report, the court authorized the Official Committee of Unsecured Creditors to commence an adversary proceeding against various entities and individuals regarding the alleged misconduct, none of whom are named as defendants in this action. *See id.* On March 18, 2009, Amr filed a motion in the bankruptcy court seeking to dismiss SBC's bankruptcy petition on the grounds that the petition was filed to "cover up fraud, embezzlement, illegal conveyance of corporate property, illegal trading and security law violations." (Bankr. Dkt. No. 1046.) Notwithstanding these developments, and having "fully considered" Amr's motion, on July 6, 2009, the bankruptcy court "denied and overruled [Amr's motion] on the merits" and confirmed SBC's Second Amended Chapter 11 Liquidating Plan (the "Plan"). (*See* AC ¶ 47; Bankr. Dkt. No. 1529 at 12.)

On December 28, 2009, Plaintiff filed in the bankruptcy court a thirteen page motion to revoke the confirmation order, alleging that the bankruptcy petition had been fraudulently filed. (*See* Bankr. Dkt. No. 1682.) Plaintiff asserted that Rayburn lied in his affidavit by misrepresenting to the court that the sale of SBC's assets to OIG was legitimate and that Rayburn knew that the sale—which allegedly involved the phantom sale of phantom assets—created a fraudulent receivable. (*Id.* at 3–4.) Plaintiff further alleged that Rayburn misrepresented in his affidavit the value of the SBC shareholders' shares and that his affidavit improperly influenced the court's decision to confirm the Plan. (*Id.* at 10–11.) As to Mitchell and Greenberg Traurig, Plaintiff asserted that these defendants had committed fraud by opposing the appointment of an examiner, which Plaintiff argued they had opposed in hopes of concealing the pre-petition fraudulent conduct. (*Id.* at 5–6.) Plaintiff also accused Mitchell of failing to take proactive steps to address the pre-petition fraud despite her knowledge of the fraud, which Plaintiff attributed to her based on her attendance at meetings of the board of directors. (*Id.*) Finally, Plaintiff accused Silver Point, a creditor that provided SBC a term loan and a revolving line of credit, of having committed fraud by failing to conduct proper due diligence into the sale of SBC's assets to OIG. Plaintiff alleged that upon SBC's default, Silver Point, as SBC's creditor, gained the authority to control SBC's cash flow and that, as a result, Silver Point concealed fraudulent conduct from the court to ensure that it would retain control over SBC throughout the bankruptcy proceedings. (*Id.* at 6–7.)

Plaintiff's motion was opposed and, in his response filed on March 8, 2010, Plaintiff reiterated the claims outlined above, but included an additional claim that Rayburn had omitted from his affidavit—and

had offered conflicting testimony as to—the true reason for SBC's insolvency. (See Bankr. Dkt. No. 1732 at 3.) On January 22, 2010, Cliff Buxbaum, another of Plaintiff's fellow SBC shareholders in the bankruptcy action, filed a letter in support of Plaintiffs motion to revoke the confirmation order. (*See* Bankr. Dkt. No. 1693.)

In a March 25, 2010 order, the bankruptcy court denied Plaintiff's motion to revoke its confirmation order. The court, referring to the standards under the bankruptcy code for revoking a final order confirming a Chapter 11 plan, indicated that revocation is permissible "if and only if such order was procured by fraud." (Bankr. Dkt. No. 1745); 11 U.S.C. § 1144. In determining whether Plaintiff had established such fraud, the court reviewed, among other things, both of Plaintiffs submissions as well as the letter in support submitted by Plaintiffs fellow shareholder. The court noted that it had devoted a "significant amount of time and attention to these cases in the nearly two years since the Petition Date." (Bankr. Dkt. No. 1745 ¶ 7.) In that time, the court had held "[l]engthy, contested hearings," at which "substantial evidence and testimony were introduced, in connection with both approval of the Disclosure Statement and confirmation of the Plan." (*Id.*) Having considered all of the relevant evidence before it, the court concluded that whatever pre-petition fraud may have occurred, "there is simply no support in the record for the proposition that the confirmation of the Plan was procured by fraud." (*Id.*) Plaintiff did not appeal the bankruptcy court's order.

### B. *The Current Action*

On July 7, 2011, Plaintiff filed his complaint in this court against Defendants. By jointly filed letter dated October 25, 2011, Defendants sought permission for each defendant to file a separate motion to dismiss. This court referred that request to Magistrate Judge Pohorelsky, who, at a pre-motion conference held on November 8, 2011, granted Defendants permission to file their motions to dismiss. Defendants served their motions to dismiss on Plaintiff. Rather than file an opposition, however, Plaintiff served on Defendants a second complaint. In light of this, Judge Pohorelsky held a conference on June 22, 2012 at which he granted Plaintiff leave to file his amended complaint and established a new briefing schedule. On June 29, 2012, Plaintiff filed the amended complaint asserting causes of action for (1) civil conspiracy, (2) fraud, (3) gross negligence, (4) breach of fiduciary duty, (5) aiding and abetting breach of fiduciary duty, (6) conversion, (7) negligent misrepresentation, (8) fraudulent concealment, (9) deprivation of honest services, (10) violation of the Racketeer Influenced and Corrupt Organizations statute, (11) unjust enrichment, and (12) and violations of the federal securities laws.

Despite the myriad of claims Plaintiff asserts against Defendants, the factual allegations underlying these claims all fall within two categories of conduct. First, Plaintiff alleges that Defendants structured a fraudulent transaction to transfer SBC's assets. Plaintiffs specific allegations against Defendants in this regard appear to be that (1) Defendants improperly failed to disclose to the bankruptcy court that OIG was not an "arms length" purchaser and that any purchase by OIG was conducted in "bad faith," (2) there was an intimate relationship between the parties to the APA that created a conflict of interest between them, (3) the APA was false and misleading because it did not disclose to the bankruptcy court that the purpose of the asset transfer was to facilitate fraud, and (4) Defendants improperly failed to disclose to the bankruptcy court

that a certain asset called the "Bird's Nest inventory" was fraudulently transferred to OIG in the APA. (AC ¶¶ 22–24, 27, 30, 55, 57, 82, 89–91, 106, 114–15, 133, 142.) In Plaintiff's memorandum opposing Defendants' motions to dismiss, he alleges that in addition to the Bird's Nest inventory, SBC's proposed asset sale included additional fraudulent assets, such as the SCHOT and OFE receivables. (Pl. Opp. at 2.)

Second, Plaintiff alleges that Defendants defrauded the bankruptcy court by including intentional misrepresentations and material omissions in both the bankruptcy petition and the Rayburn Affidavit. In this regard, Plaintiff asserts that Defendants (1) concealed from the bankruptcy court the true cause of SBC's insolvency, (2) lied that the proposed sale of SBC's assets was legitimate, (3) misrepresented to the court the recovery options for the SBC shareholders, (4) improperly opposed the appointment of an examiner in an effort to conceal their fraudulent conduct, and (5) misrepresented to the bankruptcy court the value of the SBC shareholders' shares. (AC ¶¶ 43, 44, 52, 54, 55, 92–94, 109.) Defendants have moved to dismiss Plaintiff's amended complaint, arguing, *inter alia,* that Plaintiff is barred by collateral estoppel from asserting any of his claims against them in this court.[3]

### III. DISCUSSION

█ As an initial matter, the court notes that Plaintiff's amended complaint contains no facts or allegations pertaining to the unidentified defendants other than inclusion of John Does 1–20 in the caption. Accordingly, to the extent the amended

complaint raises any federal claim against these unnamed defendants, the complaint must be dismissed as to them for failure to state a claim upon which relief can be granted.

█ As to the named defendants in this action, under the general principles of collateral estoppel,

> a judgment in a prior proceeding bars a party and its privies from relitigating an issue if, but only if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Carney v. Philippone,* 332 F.3d 163, 169–70 (2d Cir.2003). Applying these principles, and as described more fully below, the court concludes that the bankruptcy court's orders have collateral estoppel effect such that Plaintiff is precluded from asserting his federal claims against Defendants.

### A. *Identity of Issues*

█ The court must first determine whether the issues raised in the bankruptcy court proceedings and those raised by Plaintiff here are identical. Issues are not identical if the legal standards governing their resolution are significantly different. *See Comp. Assocs. Int'l, Inc. v. Altai, Inc.,* 126 F.3d 365, 371 (2d Cir.1997). However, "[t]o meet the identity-of-issues prong of collateral estoppel, it is not necessary that the issues be exactly identical; it is suffi-

---

**3.** Although the FTI Defendants, the Greenberg Traurig Defendants, and Silver Point all filed separate motions to dismiss, each expressly adopted the rationales for dismissal asserted by co-defendants. Thus, although the collateral estoppel argument was dis-

cussed only in the memorandum filed by the Greenberg Traurig Defendants, the court considers whether Plaintiff is collaterally estopped from asserting his federal claims as it pertains to all of the named defendants.

cient that 'the issues presented in [the earlier litigation] are substantially the same as those presented by [the later] action.'" *Thomas v. Venditto*, 925 F.Supp.2d 352, 361 (E.D.N.Y.2013); quoting (*Zherka v. City of N.Y.*, 459 Fed.Appx. 10, 13 (2d Cir.2012)) (alterations in original); *see also Muhammad v. Reeves*, 2012 WL 5617113, at *5 (W.D.N.Y. Nov. 15, 2012) (concluding that "[a]lthough the nature of a common law negligence claim is different than a federal civil rights claim, as is the applicable legal standard, the issues, necessarily decided in the state court case, are identical to those in plaintiff's federal court civil rights action.").

 There can be no real dispute here that the issues that comprise the basis for Plaintiff's amended complaint are identical to those previously raised in the bankruptcy proceedings. As described, in Plaintiff's motion to revoke the bankruptcy court's confirmation order and his objections to the proposed sale of SBC's assets, both of which were filed in the bankruptcy court, Plaintiff raised, respectfully, the issue of Defendants' allegedly fraudulent conduct in the bankruptcy proceedings and Defendants' allegedly fraudulent conduct regarding the proposed sale of SBC's assets. These are precisely the issues Plaintiff seeks to litigate here. And, contrary to what Plaintiff appears to suggest in his opposition, it is of little moment that he asserts these facts as the basis for claims that he did not raise in bankruptcy court. What matters for collateral estoppel purposes is that the *issues are* identical, not the *claims* themselves. *See Zherka*, 459 Fed.Appx. at 13 (noting that the doctrine of collateral estoppel developed to prevent individuals from "seek[ing] to repeatedly litigate the same issue by means of more specific pleadings, by repackaging the same factual allegations under different causes of action or by filing identical actions against different defendants.").

Moreover, the court concludes that the bankruptcy court applied substantially similar legal standards as this court would apply here. The bankruptcy court denied Plaintiff's motion to revoke the confirmation order and overruled his objections to the proposed sale of SBC's assets based on its determinations that Plaintiff had failed to establish that Defendants' conduct at issue here constituted fraud. Thus, this court would be unable to grant Plaintiff relief without making findings directly contrary to those made by the bankruptcy court; namely, that the very conduct the bankruptcy court has already rejected as not being fraudulent is, in fact, fraudulent. Such a result is barred by the doctrine of collateral estoppel. *See LaFleur v. Whitman*, 300 F.3d 256, 273 (2d Cir.2002) (concluding that issues raised by petitioner in federal action were identical to issues raised in the state court action because the court could not grant the requested relief "without directly contradicting the state court on issues it has previously decided."); *cf. also Sharp v. Abate*, 887 F.Supp. 695, 700 (S.D.N.Y.1995) (finding that collateral estoppel did not bar the issues raised by plaintiff in subsequent litigation where the prior state court decision did not necessarily rest on a finding that was inconsistent with the findings the federal district court would have to make for purposes of deciding plaintiffs subsequent federal claim). Accordingly, the court concludes that Defendants have established an identity of issues for purposes of collateral estoppel.[4]

---

**4.** The court also notes that Plaintiff would bear a similar burden of proof in this court as that borne by him in the bankruptcy court. *Compare* 8B C.J.S. *Bankruptcy* § 1164 n. 1

(noting that the preponderance of evidence standard governs decisions whether to revoke a confirmation order due to fraud pursuant to 11 U.S.C. § 1144) *with United States v. Khem-*

B. *Actually Litigated and Actually Decided*

■ Having determined that Plaintiff raised identical issues in both the bankruptcy proceedings and in his amended complaint before this court, the court must determine whether those issues were actually litigated and decided in bankruptcy court. "[F]or a question to have been actually litigated ... it must have been properly raised by the pleadings or otherwise placed in issue." *Evans v. Ottimo,* 469 F.3d 278, 282 (2d Cir.2006) (citation omitted). The court concludes that this requirement has been met here.

■ In its March 25, 2010 order on Plaintiff's motion to revoke its confirmation order, the bankruptcy court noted that revocation is permissible only upon a finding that the order was procured by fraud. (*See* Bankr. Dkt. No. 1745); *see also* 11 U.S.C. § 1144. As a result, having considered Plaintiff's allegations that Defendants lied in both the bankruptcy petition and the Rayburn Affidavit, the bankruptcy court squarely addressed whether Plaintiff had established any instance of fraud such that revocation was appropriate. In denying Plaintiff's motion, the court noted that despite the occurrence of *pre-petition* fraud, "there is simply no support in the record for the proposition that the confirmation of the Plan was procured by fraud." (*Id.* ¶ 7.) Plaintiff is therefore simply incorrect when he states that the bankruptcy court "never made a single conclusive ruling to 'post-petition bankruptcy fraud.'" (Pl. Opp. Affidavit at 17.) Accordingly, the court finds that the bankruptcy court actually decided the question of whether Defendants had defrauded the court via their filing of the bankruptcy petition and the Rayburn Affidavit.

Persevering, Plaintiff, in his opposition, appears to argue that the bankruptcy court's March 25, 2010 ruling should not be deemed to have actually decided the issue of fraud given the court's later statements that it would have conducted proceedings differently had it been aware of the pre-petition fraud earlier in the proceedings. This court disagrees. The later statements on which Plaintiff primarily relies were made at a June 23, 2011 hearing, whereby the bankruptcy court answered a hypothetical posed by Plaintiff as to whether it would have appointed a shareholders committee had the court been made aware of the pre-petition fraud from the outset. In responding to Plaintiff's question, the bankruptcy court judge first noted that it "requires [me] to crystal ball it a little bit." (Bankr. Dkt. No. 1912 at 40.) The judge nonetheless continued, "[H]ad it been demonstrated to me at the earliest stages of this case, that there was material fraud or I should have significant reason to doubt the integrity of the process or the players in front of me, I would have converted the case." (*Id.*) However, the bankruptcy court also indicated that it did not believe that knowledge of the pre-petition fraud "would have changed at all the analysis of whether or not there would have been a shareholders committee." (*Id.*)

In any event, this colloquy with Plaintiff in no way undermines the bankruptcy court's March 25, 2010 order. Indeed, following the court's June 23, 2011 statements cited by Plaintiff, the bankruptcy court at least twice affirmed the conclusion from its March 25, 2010 order that whatever pre-petition fraud befell SBC, it in no way tainted the bankruptcy petition or the

---

*raj,* 2008 WL 2388693, at *2 (E.D.N.Y. June 11, 2008) (quoting *United States v. Brown,* 988 F.2d 658, 663 (6th Cir.1993)) (noting that

"the burden in civil actions has traditionally been placed on the plaintiff by a preponderance of the evidence.").

bankruptcy proceedings. (*See* Bankr. Dkt. No. 1904 at 6 (bankruptcy court addressing a shareholder's allegations that Defendants had defrauded the court during the course of the bankruptcy proceedings and noting that the "confirmation of [SBC's] Plan was not procured by fraud, and the Court does not conclude that any fraud has been perpetrated upon the Court during the course of these bankruptcy cases."); *see also* Bankr. Dkt. No. 1938 at 12 (November 17, 2011 Hearing Transcript) (denying motions to compel filed by several shareholders that requested that the bankruptcy court refer Defendants' names to various government entities for investigation because the court was "not satisfied— and I've made this ruling and finding before, that [the] fraud extended over into the post-petition proceedings before this Court" and noting that "the [P]lan itself, specifically was confirmed more than two years ago, and that that order has become a final order. And by operation of applicable law, it is beyond reconsideration or revisitation by this Court.").) Thus, the bankruptcy court's June 23, 2011 statements do not provide a basis for revisiting its March 25, 2010 order.

This court likewise concludes that the bankruptcy court actually decided the issue of whether Defendants had engaged in fraud associated with the proposed sale of SBC's assets. On August 20, 2008, the bankruptcy court issued an oral decision in which it overruled Plaintiff's objections to the APA and the proposed sale based on fraud and allowed the sale to proceed. In so doing, the court concluded that SBC had established that the sale represented the exercise of SBC's best business judgment. (Bankr. Dkt. No. 380 at 176–77.) Importantly, the bankruptcy court specifically addressed the fraud allegations raised by Plaintiff in those proceedings— and repeated here—but found Rayburn's testimony on the issues compelling and

therefore determined that the APA had been negotiated at arm's length and in good faith, that the deal was not fraudulently structured to transfer fictitious or fraudulent assets, and that "there is absolutely nothing in the record before [the court] that would support the proposition that an alternative transaction exists or that a reorganization strategy exists that would maintain or result in shareholder value here." (*Id.* at 180.) Having found no merit to Plaintiffs allegations of fraud, the court approved the sale pursuant to the APA. (*Id.*)

### C. *Full and Fair Opportunity to Litigate*

■ The court further concludes that Plaintiff had a full and fair opportunity to litigate these issues. This prong of the collateral estoppel analysis requires a showing that the plaintiff "was fully able to raise the same factual or legal issues" in the prior litigation as those asserted in the present case. *LaFleur,* 300 F.3d at 274.

■ As to his fraud allegations pertaining to the bankruptcy petition and the Raybum Affidavit, Plaintiff, in seeking revocation of the bankruptcy court's confirmation order, filed an eleven-page motion in that court fully setting forth his allegations against the entities and individuals that are now named as defendants in this action and the factual support underpinning those allegations. That motion was vigorously opposed by Defendants and Plaintiff filed a response, attempting to counter the arguments proffered and even asserting an additional basis for his fraud claim. (*See* Bankr. Dkt. No. 1732.) Moreover, one of Plaintiff's fellow shareholders filed a letter in support of Plaintiff's motion that echoed, and in some instances further elaborated upon, Plaintiffs accusations. (*See* Bankr. Dkt. No. 1693.) In addition to

Plaintiff's submissions, the bankruptcy court noted that it had held "[l]engthy, contested hearings," at which "substantial evidence and testimony were introduced, in connection with both approval of the Disclosure Statement and confirmation of the Plan." (Bankr. Dkt. No. 1745.) Thus, notwithstanding the shareholders' submissions, the bankruptcy court concluded that there was nothing in the record that would support a finding of fraud. In light of Plaintiff's involvement in the proceedings and his participation in motion practice regarding the issue of whether Defendants defrauded the bankruptcy court, this court concludes that Plaintiff received a full and fair opportunity to litigate these issues. See Nelson v. Hilton, 2012 WL 7678161, at *5 n. 5 (N.D.N.Y. Oct. 9, 2012) (noting that plaintiff had full and fair opportunity to litigate deliberate indifference claim when, in prior proceeding, plaintiff had participated in the litigation and pending motion practice).

■■■ As to whether Plaintiff had a full and fair opportunity to litigate his fraud allegations regarding the APA and the proposed sale of SBC's assets, on August 20, 2008, the bankruptcy court held a full hearing to address whether it would approve the proposed sale and to consider all objections to the sale of SBC's assets—including those filed by Plaintiff and a fellow shareholder, Although Plaintiff chose not to attend the hearing, he filed two sets of objections raising the very same issues of fraud that he raises in his amended complaint here and that were considered by the court. (See Bankr. Dkt. Nos. 87, 277.) As importantly, one of Plaintiff's fellow shareholders, who had filed objections to the proposed sale based on allegations of fraud similar to those raised by Plaintiff, did attend the hearing. That shareholder cross-examined Rayburn as to the specific allegations of fraud and

explored the shareholders' mutual concerns regarding the proposed transfer of allegedly fraudulent assets, the fraudulent nature of the purchaser, and whether there were conflicts of interest between the parties involved such that the negotiations did not occur at arms-length. (Bankr. Dkt. No. 380 at 88–142.) In light of the fact that Plaintiff submitted memoranda regarding the fraud allegations and had an opportunity to cross-examine witnesses—which his fellow shareholder took advantage of—the court concludes that he was afforded a full and a fair opportunity to litigate any issue of fraud associated with the APA and the proposed sale. See, e.g., Nurse v. City of New York, 735 F.Supp. 69, 70–71 (S.D.N.Y.1990) (finding that plaintiff previously had a full and fair opportunity to litigate discrimination claims in part because a hearing was held and she was afforded the opportunity to cross-examine witnesses).

D. *Necessary to Support a Valid and Final Judgment on the Merits*

■■■ Finally, the court concludes that the bankruptcy court's decisions regarding Plaintiff's allegations of fraud were necessary to support valid and final judgments on the merits. As the bankruptcy court indicated, revocation of its confirmation order is permissible only upon a finding of fraud. Thus, the bankruptcy court's denial of Plaintiffs motion to revoke the confirmation order necessarily rested on its finding that Plaintiff had not established that Defendants engaged in fraud. Similarly, the bankruptcy court's conclusion that none of the conduct identified by Plaintiff or his fellow shareholder regarding the proposed sale of SBC's assets was, in fact, fraudulent, was necessary to its decision to allow the sale to proceed. Accordingly, the fourth prong of collateral estoppel has been satisfied.

To be clear, the court does not discount the possibility that Plaintiff may well have been injured as a result of fraudulent conduct predating the bankruptcy proceedings. On the record before it, however, the court concludes that the bankruptcy court has already considered and decided that the particular defendants named here did not engage in any of the fraud Plaintiff now complains of. Given the bankruptcy court's determinative rulings on these issues, collateral estoppel applies and this court is barred from revisiting them. The court, therefore, does not reach Defendants' remaining arguments regarding Plaintiff's failure to state a claim.

Because the court dismisses all of Plaintiff's federal claims, to the extent Plaintiff asserts any state law claims, the court declines to reach them. *See Castellano v. Bd. of Trs., et al.,* 937 F.2d 752, 758 (2d Cir.1991) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). Plaintiff's state law claims are therefore dismissed without prejudice. Moreover, to the extent Plaintiff, in his affidavit in support of his opposition to Defendants' motions to dismiss, seeks leave to amend his complaint a second time, such request is denied. The court notes that Plaintiff has already amended his complaint and did so with the benefit of Defendants' first motions to dismiss. As importantly, Plaintiff has not attached a proposed amended complaint, does not indicate in what way he wishes to amend his complaint, and does not suggest any additional facts that he might allege. (Plaintiff's Affidavit Attached to Pl. Opp. at 29.)

### IV. CONCLUSION

For the reasons stated above, Defendants have met the requirements for collateral estoppel and Plaintiff is therefore precluded from asserting the federal causes of action he asserts here, which are based only on issues of post-petition fraud already decided and rejected by the bankruptcy court. Accordingly, Defendants' motions [95] [99] [102] are GRANTED and all of Plaintiffs federal claims are DISMISSED. Moreover, to the extent Plaintiff asserts any state law claims, the court declines to reach them and such claims are DISMISSED without prejudice. Finally, to the extent Plaintiff requests leave to amend his complaint a second time, that request is DENIED. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.